IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PCS AEROSPACE AND MARKETING, L.L.C., a Florida Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>SELECT AVIATION SERVICES, INC., a Montana Corporation,<br><br>Defendant,<br><br>and<br><br>MATN,<br><br>Intervenor-Defendant. | CV 14–26–M–DLC<br><br>OPINION<br><br>$\quad$JUN 2 7 2014<br>Clerk, U.S. District Court<br>District Of Montana<br>Missoula |

On May 27,[1] Select filed notice that it was appealing what it characterized as the Court's "order granting preliminary injunction entered in open court in this action on May 23." (Doc. 60.) Select then moved the Court to stay its order that MATN is entitled to immediate possession of the seven Bell 212 helicopters that are the subject of this case. (Doc. 62.) MATN and PCS filed their briefs in opposition to the motion on June 11, and on June 13, Counsel for Select notified

---

[1] All dates contained in this opinion refer to the year 2014.

1

the Court that MATN intends to take possession of the helicopters on June 16, and requested an immediate ruling on the motion for stay pending appeal. The Court accommodated PCS's request on the same day it was received, issuing an order denying the motion. (Doc. 79.) In the interest of providing PCS a prompt ruling the Court did not include the reasoning behind its decision, which it now addresses in this opinion.

PCS has mischaracterized several aspects of the May 23 hearing, but this opinion need only address MATN's erroneous statement that the Court issued a preliminary injunction. As described herein, the Court did no such thing. The Court has reviewed the docket in this case, including the transcript of the hearing, and will now outline the status of the case at the time of the hearing and clarify its findings and orders.

PCS filed its Complaint in Montana's Twenty-First Judicial District Court alleging breach of contract, and Select removed the case to this Court on January 27. While the underlying dispute is based on breach of contract, it is the subject of that contract – seven Bell 212 helicopters and associated materials – that has been the focus of this case to date. At the time of removal PCS and Select were both in possession of some of the helicopter components and materials. On February 20, PCS filed its Renewed Amended Motion for Possession of the helicopters

("Motion for Possession"). (Doc. 20). On March 6, Select filed a Motion to Restore Property Subject to Lien for Services ("Motion to Restore Property"), requesting that the Court restore to Select the helicopter materials in PCS's possession, claiming that they were subject to Select's lien for services under Montana law. (Doc. 23.) Upon review of the briefs and other materials filed in support of both motions, the Court noted several key issues that must be considered prior to determining the helicopters' fate, but that had not been addressed by the parties. Of foremost concern was the absence of MATN, the company that owned the helicopters and contracted with PCS to refurbish them, as a party to this case. Based on the information available at the time the Court believed that MATN owned the helicopters, and was troubled by the parties' failure to discuss the impact of any potential ruling on MATN and whether MATN is a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure. The parties also failed to address the relationship between the breach of contract claim and the lien/possession claims, and why the arbitration clause contained in the contract between PCS and Select did not govern this dispute. On April 30, the Court ordered additional briefing on these subjects and set a hearing for June 25. (Doc. 33.)

On May 8, MATN filed an Unopposed Motion to Intervene and Request for Expedited Ruling (Doc. 34), which the Court granted on May 12. (Doc. 37.) The following day MATN filed a Motion for Immediate Possession of Property and Declaratory Relief ("Motion for Immediate Possession"). (Doc. 41.) MATN moved for immediate possession of the helicopters and associated materials pursuant to Federal Rule 64(b) and Montana Code Annotated § 27-1-432, and for declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule 57 that any purported liens placed on MATN's property by Select are invalid. On the same day, May 14, MATN filed another motion titled Motion for Temporary Restraining Order, for Order to Show Cause Why Preliminary Injunction Should Not Issue and for Order Requiring Inventory of the Helicopters ("Motion for Temporary Restraining Order"). (Doc. 43.) In that motion MATN requested the Court issue a temporary restraining order ("TRO") preventing PCS and Select from moving or altering the helicopters and associated materials pursuant to Federal Rule 65, and requiring PCS and Select to show cause why a preliminary injunction should not issue upon expiration of the TRO in order to protect MATN's property interests and to prevent irreparable harm until the Court rules on its Motion for Immediate Possession. MATN further requested an order requiring PCS and Select to compile an inventory of all helicopter materials in

4

their possession.

Thus, as of May 14 the Court had before it four motions through which all three parties claimed the right to possess the helicopters, albeit based on different arguments and legal theories.

On May 15, the Court issued an order establishing a roadmap to facilitate the resolution of the competing claims relating to ownership and right of possession, and granting MATN's Motion for Temporary Restraining Order. (Doc. 45.) The Court first conducted the appropriate analysis pursuant to *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), concluding that a TRO was appropriate. The Court issued a TRO effective for 14 days – the maximum term permitted under Federal Rule 65(b)(2). Next, the Court recognized that even if it eventually granted the 14 day extension provided for in Rule 65(b)(2), the TRO would lapse prior to the June 25 hearing. In order to avoid such a lapse and due to its confidence that the parties were prepared to address these issues, the Court reset the hearing for May 23 and ordered that the parties be prepared to address: (1) MATN's Motion for Immediate Possession (Doc. 41); (2) the conversion of the TRO into a preliminary injunction pursuant to Rule 65(a), should the Court decline to rule on MATN's Motion for Immediate Possession; and (3) the merits of PCS's Motion for Possession (Doc. 20) and Select's Motion

for Return of Property (Doc. 23). Finally, the Court ordered PCS and Select to conduct an inventory of the helicopter materials currently in their possession. The Court closed its order by stating that it was "committed to reaching an expeditious *and final* disposition of the possession issue, which will benefit all parties, and will permit the parties to move forward with the underlying breach of contract claim." (Doc. 45 at 9 (emphasis added).)

On May 16, PCS filed a brief stating that MATN was in fact the exclusive owner of the helicopters and as such, was entitled to possession (Doc. 46). On May 19, PCS filed an unopposed motion to be relieved from appearing at the May 23 hearing, stating that it does not oppose MATN's motions and would not offer any testimony or argument in opposition to those motions. (Doc. 49.) While it appeared that PCS was "essentially withdrawing its claim for possession on favor of MATN's claim," out of an abundance of caution, the Court ordered PCS to file notice "regarding its claim to possession, and either withdrawing its motion for possession (Doc. 20), or informing the Court of the reasons why it declines to withdraw." (Doc. 50 at 3.) PCS filed notice expressing its support for MATN's request for sole possession and withdrawing its Motion for Possession in support of MATN's Motion for Immediate Possession. (Doc. 51) The Court excused PCS from attending the hearing and denied its withdrawn Motion for Possession as

moot. (Doc. 52.)

Thus, on the morning of the hearing the Court had before it two competing motions: Select's Motion to Restore Property (Doc. 23), and MATN's Motion for Immediate Possession (Doc. 41). In the days leading up to the hearing, the Court received and reviewed various briefs and supporting materials submitted by Select and MATN. Counsel for both parties appeared on May 23 and advanced several arguments – most of which had been addressed in their various briefs – and responded to the Court's questions. Based on the parties' briefing, the testimony and evidence offered in support thereof, the statements made by Counsel at the hearing, and applicable law, the Court made several findings on the record and issued several orders.

First, the Court found as a matter of law that MATN is the exclusive owner of the seven helicopters at issue, as well as their log books and all associated equipment and materials. (Doc. 71 at 53.) Next, the Court found as a matter of law that Select failed to provide a proper affidavit as required by the applicable state lien statute, Montana Code Annotated § 71-3-1203. (Doc. 71 at 54.) Third, the Court found that Select's valid cancellation of the contract underlying this case did not affect its waiver of sale, which is the only remedy permitted under the lien statute. (*Id.*) Finally, based on these findings, the Court concluded as a matter of

law that Select does not have a valid lien on any of the materials at issue. (Doc. 71 at 55.)

Based on its findings the Court granted MATN's Motion for Immediate Possession and denied Select's Motion for Return of Property. In so doing, the Court acted under Federal Rule 64 and granted MATN immediate possession of the helicopters pursuant to Montana Code Annotated § 27-1-432. The Court also acted under the authority of Federal Rule 57 and granted declaratory judgment that Select does not hold a valid lien on the helicopters. Based on its definitive rulings on these underlying legal issues, the Court ordered that Select permit MATN to recover its property. It did not issue an injunction – preliminary, mandatory, or otherwise.[2] The only injunctive relief granted in this matter was the TRO, which was vitiated by the Courts findings and orders of May 23.

Federal Rule of Civil Procedure 62(c) states: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an

---

[2] Select's characterization of the Court's actions as a form of injunctive relief simply stretches the concept of such relief too far. Black's Law Dictionary defines "injunction" as a "court order commanding or preventing an action." "In a general sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing." 1 Howard C. Joyce, *A Treatise on the Law Relating to Injunctions* § 1, at 2-3 (1909). The Court ordered PCS and Select to make arrangements to permit MATN to obtain the helicopters based on its rulings on the underlying legal issues, not as a form of injunctive relief.

injunction, the court may suspend, modify, restore, or grant an injunction on terms of bond or other terms that secure the opposing party's rights." Because the order that is currently pending appeal does not grant an injunction, this Court does not have the authority to grant a stay pursuant to Rule 62(c).[3] The parties do not cite and the Court is not aware of any other authority under which it may properly issue a stay in this situation. For all intents and purposes, Select's motion amounts to a request that the Court reconsider its rulings that MATN is entitled to immediate possession of the helicopters and that Select's purported lien is invalid. The Court issued its findings and orders following a hearing and after thorough review of the parties' briefing and applicable law. Select has not raised any new

---

[3] Even if the Court had the authority to stay its order pending appeal pursuant to Rule 62(a), Select has failed to demonstrate the critical element of irreparable harm. *See Nken v. Holder*, 556 U.S. 418, 433-434 (2009) (stating that issuance of a stay is guided by consideration of four factors, including "whether the applicant will be irreparably injured absent a stay," and rejecting an approach whereby a stay can issue by "simply showing some possibility of irreparable injury"); *Leiva-Perez v. Holder*, 640 F.3d 962, 965-968 (9th Cir. 2011) ("stays must be denied to all petitioners who [do] not meet the applicable irreparable harm threshold" by showing that "irreparable harm is probable if the stay is not granted"). Select argues that if it prevails on the breach of contract claim and is awarded a monetary judgment, the helicopters will be the only means by which it may recover, claiming that neither MATN nor PCS will be able to satisfy the potential judgment. This argument is simply predicated on too many "ifs" and unresolved issues still pending in this case. Select's showing on irreparable harm is entirely speculative and does not present a likelihood or probability of any harm absent a stay. Finally, the Court rejects Select's argument predicated on the Court's previous determination that the helicopters are unique and irreplaceable. The Court clarifies that the helicopters are unique in relation to MATN because they are a component of a larger project MATN is completing for the Congolese government, and due to the State Department's approval of the sale of these specific helicopters. (Doc. 45 at 4-5.) Because neither of these considerations applies to Select, they are not unique and irreplaceable relative to that party.

arguments in the instant motion, and the Court will not revisit the issues it resolved at the May 23 hearing.[4]

As a final matter, although determination of the issue of appealability lies with the Ninth Circuit, it is the Court's opinion that Select's appeal is defective. Select is appealing an interlocutory order. *See Black's Law Dictionary* 1207 (9th ed. 2009) (defining "interlocutory order" as "[a]n order that relates to some intermediate matter in the case; any order other than a final order"). United States courts of appeals have jurisdiction over appeals from "Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a). Because the interlocutory order is not in any way related to an injunction, Select was required to petition the Ninth Circuit for permission to appeal the order, which it failed to do.[5] Fed. R. App. P. 5.

---

[4] As stated during the hearing, Select has presented several valid arguments related to the breach of contract claim that forms the basis of this action. Select may advance these arguments as this case progresses, but they have no bearing on the issue of possession and validity of the lien.

[5] Even if a Rule 62(a) analysis was proper in this case, since the appeal is defective Select is highly unlikely to succeed on the merits. *See Nken*, 556 U.S. at 433-434 (the issuance of a stay is guided by four factors, including "whether the stay applicant has made a strong showing that he is likely to succeed on the merits," which is one of the most critical factors, along with a showing of irreparable harm).

This opinion hereby constitutes the Court's analysis supporting its June 13 order denying Select's Motion for Stay Pending Appeal (Doc. 79).

Dated this 27th day of June, 2014.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court